UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, *et al.* | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 1:13-cv-01770-LJM-TAB |
| ARCH INSURANCE COMPANY, *et al.* | ) ) ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on Defendants', Arch Insurance Company and

Arch Specialty Insurance Company's (collectively, "Arch's"), Motion to Compel the

Depositions of Ian S. Pettman and Mike Brown or, in the Alternative, to Strike the

Affidavits of Ian S. Pettman and Mike Brown, and Motion for Sanctions (the "Motion").

Dkt. No. 631. In the Motion, Arch seeks to compel the depositions of two British citizens

that submitted affidavits on behalf of Plaintiffs, Eli Lilly and Company and Eli Lilly do Brasil,

Ltda. (collectively, "Lilly"), or alternatively, to strike their affidavits in connection with Lilly's

Second Amended Complaint and Cross Motion for Summary Judgment. Dkt. No. 632 at

35. Arch also requests that the Court order Lilly "to pay Arch's costs incurred in

conjunction with this motion and [Arch's] prior attempts to obtain" the desired depositions.

*Id.* For the reasons stated herein, the Court **GRANTS in part and DENIES in part** Arch's

Motion.

## I. BACKGROUND

Generally, this case involves an insurance dispute that arises from claims against

Eli Lilly do Brasil ("Lilly Brasil") for alleged environmental contamination and products

liability injuries related to a plant in Brazil. Dkt. No. 289, ¶¶ 10-55. In its Second Amended Complaint, Lilly asserts that the liabilities of Lilly Brasil, a wholly-owned subsidiary of Eli Lilly and Company ("Lilly U.S."), are covered by certain primary and excess insurance policies purchased by Lilly U.S. *Id.* at ¶¶ 56-98. Lilly also asserts that if Lilly Brasil is not expressly covered, certain excess insurance policies should be reformed to allow for such coverage based on the doctrine of mutual mistake. *Id.* at ¶¶ 99-175. In support of its allegation regarding mutual mistake, Lilly attached affidavits (the "Affidavits") of British citizens, Ian S. Pettman and Mike Brown (collectively, the "JLT Witnesses"), to its First Amended Complaint, Dkt. No. 211, Exs. I ("Pettman Aff.") & J ("Brown Aff."), and relied on the Affidavits in its Cross Motion for Partial Summary Judgment. Dkt. No. 460 at 9-10. While both of the JLT Witnesses are employees of the British company, JLT Specialty Limited ("JLT"), the Affidavits were executed by the JLT Witnesses in their individual capacities, rather than their official capacities for JLT. *See generally*, Pettman Aff; Brown Aff.

In the Affidavits, the JLT Witnesses explained that they have worked closely with Lilly U.S. to provide and manage worldwide excess commercial general liability, employee liability, and auto insurance coverage to Lilly U.S. and its subsidiaries. Pettman Aff., ¶¶ 4-6; Brown Aff., ¶ 5. Because JLT is not licensed in the United States, JLT had to work directly with insurance brokers in the United States (the "U.S. Brokers"), who had direct contact with the insurers that provided such coverage to Lilly U.S. Pettman Aff., ¶ 7. Although JLT could not directly obtain this worldwide coverage for Lilly U.S., it remained heavily involved with the procurement of coverage by reviewing quotes from insurers and communicating with the U.S. Brokers regarding the desired coverage. *Id.* at ¶ 9. In light

of their experiences working with Lilly U.S., the JLT Witnesses stated that they believe that the insurers providing coverage to Lilly U.S., including Arch, "were aware, and intended, that those policies [at issue] should cover Lilly [U.S.]'s world-wide operations, including those at, or arising from the activities of Lilly [U.S.]'s wholly-owned subsidiary, [Lilly Brasil]." Pettman Aff., ¶ 10; Brown Aff., ¶ 9. The JLT Witnesses further "affirm[ed] under the penalties of perjury that [their] affidavit[s are] true and accurate, to the best of [their] knowledge and belief[s]." Pettman Aff. at 4; Brown Aff. at 3.

On December 2, 2016, Arch filed a Motion to Strike the Affidavits, pursuant to Federal Rules of Civil Procedure 37(c)(1)(C) and 12(f). Dkt. No. 554. On February 8, 2017, the Court denied Arch's Motion to Strike. Dkt. No. 603. The Court found that, even though certain aspects of Lilly U.S.'s relationship with JLT were "troubling," Arch undoubtedly knew about the JLT Witnesses since the filing of Lilly's First Amended Complaint and could have approached the JLT Witnesses directly for discovery even though they are British citizens. *Id.* at 4. The latter was suggested, in part, by Lilly in response to Arch's Motion to Strike. Dkt. No. 568 at 3, 7.

Following the Court's ruling on Arch's Motion to Strike, Arch proceeded to seek depositions of the JLT Witnesses through the United Kingdom's court system (the "UK Court"), in accordance with the Hague Convention. Dkt. No. 632 at 8. On February 28, 2017, Master McCloud of the UK Court initially ordered that Arch may take the oral evidence of the JLT Witnesses for up to seven hours each, including time for cross-examination and re-direct examination of the JLT Witnesses. Dkt. No. 632, Ex. 5.

JLT objected and sought to set aside Master McCloud's order. Dkt. No. 652 at 10. Prior to the hearing that was to take place on JLT's motion to set aside, Arch and JLT

negotiated several terms regarding the process by which the JLT Witnesses would be deposed, including limiting the scope of questioning, providing the JLT Witnesses with a summary of the lines of questioning seven days in advance, and treating the depositions as trial depositions, as opposed to discovery depositions. *Id.* However, on the morning of the hearing, Arch indicated that it did not wish to proceed with the depositions without the ability to cross-examine the JLT Witnesses and admitted that such cross-examination is not permitted under English law. *Id.* at 11. On March 16, 2017, Senior Master Fontaine set aside Master McCloud's order in its entirety, finding that Arch is not entitled to cross-examine the JLT Witnesses under English law. Dkt. No. 652, Ex. A-1 at 11. Senior Master Fountaine further ordered Arch to pay fees to JLT. *Id.* at 12.

In light of the orders issued in the UK Court, Arch now seeks to either compel the JLT Witnesses' depositions in the United States, or alternatively, to strike the Affidavits altogether. *See generally*, Dkt. No. 632. Arch asserts that Lilly has sufficient control over the JLT Witnesses to compel them to appear for depositions under the Federal Rules of Civil Procedure (the "Rules"). *Id.* at 9-13. Arch further argues that, if the Court were to find that the JLT Witnesses could not be compelled to testify in depositions, the Affidavits should be stricken because the JLT Witnesses do not have personal knowledge of the information contained within the affidavits and because, without the ability to subject the JLT Witnesses to cross-examination or to otherwise test the Affidavits' veracity, the Affidavits amount to inadmissible hearsay. *Id.* at 15-22. Arch also requests that the Court require Lilly to pay Arch's costs associated with this Motion and Arch's prior attempts to obtain the depositions of the JLT Witnesses. *Id.* at 23-30.

Lilly opposes the Motion because it lacks control over the JLT Witnesses. Dkt. No. 652 at 11-14. Lilly further argues that, while the Court cannot compel cross-examination of the JLT Witnesses, Arch can still obtain its desired testimony through direct examination under English law, and that the Affidavits should not be rendered inadmissible simply because the JLT Witnesses cannot be cross-examined. *Id.* at 14-20.

## II. <u>CONTROL AND PERSONAL JURISDICTION OVER THE JLT WITNESSES</u>

Although there is a clear relationship between Lilly and JLT, there is no evidence that Lilly has sufficient control over JLT for this Court to compel Lilly to produce the JLT Witnesses for depositions. Arch correctly points out that Lilly U.S. had several agreements with JLT, through which JLT agreed to provide insurance brokering services to Lilly U.S. and agreed to encourage the JLT Witnesses to assist Lilly U.S. throughout this litigation. *See* Dkt. No. 632 at 10-13, Ex. 8. However, none of these agreements forfeit JLT's status as an independent, British company, completely distinct from Lilly U.S. Because JLT remains an independent entity and because none of its agreements with Lilly U.S. allow Lilly to demand that the JLT Witnesses appear for depositions, Lilly lacks control over JLT and the JLT Witnesses and the Court cannot compel Lilly to produce the JLT Witnesses for depositions in either the United States or the United Kingdom.

Furthermore, the Court may only compel the JLT Witnesses' depositions if it has personal jurisdiction over them. A district court must have personal jurisdiction over a non-party in order to compel its compliance with a discovery request. *See Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 745 (N.D. Ill. 2016) (citing *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1281 (7th Cir. 1990); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2nd Cir. 2014); *In re Uranium Antitrust Litig.*,

480 F. Supp. 1138, 1145 (N.D. Ill. 1979); 16 MOORE'S FEDERAL PRACTICE § 108.125 (3d ed. 2003)).  A determination of personal jurisdiction involves two steps.  The Court must first determine whether the state's "long-arm jurisdiction" statute allows jurisdiction and, second, decide whether the exercise of jurisdiction comports with due process.  *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A.*, 28 F.3d 572, 580 (7th Cir. 1994). Indiana's jurisdiction statute is Indiana Trial Rule 4.4(A), which states that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  Accordingly, this Court has personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment.

For a forum to have personal jurisdiction, the Due Process Clause requires that a non-resident entity have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Personal jurisdiction under Indiana Trial Rule 4.4(A) may be either general or specific.  *See Alpha Tau Omega v. Pure Country, Inc.*, 185 F. Supp. 2d 951, 956 (S.D. Ind. 2002).  General jurisdiction makes a non-resident entity amenable to suit within a particular forum regardless of the subject matter of the suit, based on an entity's continuous and systematic contacts with the forum.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  Specific jurisdiction makes a non-resident entity amenable only to suits arising out of or related to its contacts with the particular forum.  *Id.* at 414.  Specific jurisdiction may be based on relatively modest contacts with the forum if such contacts have a substantial connection to the litigation at issue.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76

(1985). For specific jurisdiction, due process requires that a non-resident entity have established contacts with the forum state by purposefully availing itself of the privilege of conducting business there. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987). To "purposefully avail" itself in a forum state, a non-resident entity's conduct and connection with the forum state should be such that it should reasonably anticipate being hauled into court in that state. *Burger King*, 471 U.S. at 474. When determining whether personal jurisdiction may be exercised, the Court engages in a three step analysis: (1) identify the contacts an entity has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; and (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit. *See GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

The Court does not have either general or specific jurisdiction over the JLT Witnesses in their individual capacities. Both of the JLT Witnesses are British citizens working for a British company. While the JLT Witnesses worked with Lilly U.S. to help it procure insurance and to manage its insurance claims, all of their work with Lilly U.S. was performed in their official capacities as JLT employees. *See generally*, Pettman Aff.; Brown Aff. There is no evidence in the record indicating that the JLT Witnesses had any contact with the United States outside of their official roles for JLT. Therefore, the JLT Witnesses, in their individual capacities, lack sufficient contacts with Indiana to support a finding of personal jurisdiction in this Court.

However, the Court does have personal jurisdiction over the corporate entity, JLT. Both parties acknowledge that JLT has a longstanding relationship with Lilly U.S., through which JLT contracted to serve "both as [Lilly U.S.'s] consultant and agent" to provide Lilly U.S. with insurance brokering services. Dkt. No. 632, Ex. 8 at 2. *See also*, Dkt. No. 652 at 12. Through its brokering services for Lilly U.S., JLT worked "as an extension" of Lilly U.S.'s Risk Management department. Dkt. No. 584, Ex. 3 at 3. Furthermore, JLT worked extensively through its employees to help Lilly U.S. obtain worldwide insurance coverage and was intimately involved in procuring and managing the insurance policies at issue in this litigation. Pettman Aff., ¶¶ 6-9; Brown Aff., ¶¶ 5, 7. In light of JLT's relationship with Lilly U.S., especially in relation to its work regarding the insurance policies at issue, JLT could reasonably anticipate being hauled into court in Indiana, where Lilly U.S. is headquartered. See *Burger King*, 471 U.S. at 474. As such, the Court maintains personal jurisdiction over JLT as to its involvement with the insurance policies at issue in this action.

Because the Court has personal jurisdiction over JLT, it could compel a deposition of JLT regarding its involvement with the insurance policies at issue. Under Rule 30(b)(6), a party may name "a public or private corporation, a partnership, an association, a governmental agency, or other entity" as a deponent in a deposition notice or subpoena if that party "describe[s] with reasonable particularity the matters for examination." The organization named as a deponent "must then designate one or more officers, directors, or managing agents," or other consenting, designated individuals to "testify about information known or reasonably available to the organization," on the organization's behalf. Fed. R. Civ. P. 30(b)(6).

In light of their extensive involvement in managing and procuring the insurance policies at issue, the JLT Witnesses may serve as JLT's corporate representatives for a properly-noticed Rule 30(b)(6) deposition in this case. If the JLT Witnesses were to act as JLT's Rule 30(b)(6) representatives, the Court could compel the JLT Witnesses to appear for depositions in this forum on JLT's behalf, despite the Court's lack of personal jurisdiction over them in their individual capacities. However, such depositions of the JLT Witnesses would be limited to only "information known or reasonably available" to JLT and the JLT Witnesses' official roles as employees of JLT. Fed. R. Civ. P. 30(b)(6). Arch still could not question the JLT Witnesses regarding the Affidavits made in their individual capacities in such a Rule 30(b)(6) deposition. *See Kessler v. Palstar, Inc.*, No. 3:11-cv-35, 2011 WL 4483775 at *3 (S.D. Ohio Sept. 27, 2011) (finding that it is improper for a party to expand upon an affidavit made in an affiant's individual capacity in a Rule 30(b)(6) deposition of the affiant).

### III. <u>TRUSTWORTHINESS OF THE AFFIDAVITS</u>

Arch also argues that, if the Court cannot compel the depositions of the JLT Witnesses, the Affidavits should be stricken because Arch has no way to test their veracity. Specifically, Arch asserts that the Affidavits cannot be considered because they are not notarized and do not comply with the requirements of 28 U.S.C. § 1746. Dkt. No. 632 at 17-19. Arch further claims that it has no way to test the veracity of the Affidavits because it cannot cross-examine the JLT Witnesses, which renders the Affidavits inadmissible as hearsay. *Id.* at 20-22. In response, Lilly argues that the Affidavits substantially comply with the requirements of 28 U.S.C. § 1746 because they were made "under the penalties of perjury" and "to the best of [the JLT Witnesses'] knowledge and

belief." Dkt. No. 652 at 24.  *See also*, Pettman Aff. at 4; Brown Aff. at 3.  Lilly also asserts that even though Arch is not entitled to cross-examine the JLT Witnesses, Arch could have obtained all of the information it needed to test the truthfulness of the Affidavits through direct examination and that Arch's refusal to perform such direct examination does not render the Affidavits inadmissible.  Dkt. No. 652 at 15-20.

## A. REQUIREMENTS FOR AFFIDAVITS AND DECLARATIONS

Arch claims that the Affidavits cannot be considered by the Court in part because they do not comply with the notary requirement of Federal Rule of Evidence 902(8) ("FRE 902(8)") or the requirements of 28 U.S.C. § 1746(1) for declarations executed outside of the United States.  Dkt. No. 632 at 17-19; Dkt. No. 657 at 13-14.  Under FRE 902(8), an affidavit can be self-authenticating if it is "accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments."  Additionally, a particular matter may be supported by an individual's sworn declaration, verification, certificate, statement, oath, or affidavit made in writing if the writing states that the unsworn declaration, verification, certificate, statement, oath, or affidavit is true under penalty of perjury and dated in substantial compliance with the applicable form.  28 U.S.C. § 1746.  If such a declaration is executed outside of the United States, it must substantially comply with the following form: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on (date).  (Signature)."  28 U.S.C. § 1746(1).  If the statement is executed within the United States, or any of its territories, possessions, or commonwealths, the declaration must substantially comply

with this form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746(2).

Neither of the Affidavits have been notarized by a notary public or other qualifying officer; therefore, the Affidavits are not self-authenticating in accordance with FRE 902(8). Furthermore, although the Affidavits provide that they are made under penalty of perjury, Pettman Aff. at 4; Brown Aff. at 3, they do not indicate that they were made subject to the penalties of perjury "under the laws of the United States," as required by 28 U.S.C. § 1746(1). As stated by Lilly, the Affidavits were drafted and executed in the United Kingdom. Dkt. No. 568, Ex. A, ¶¶ 13-15. Therefore, while the Affidavits need not contain the exact language found within 28 U.S.C. § 1746(1), they must substantially follow the form set forth in that section. 28 U.S.C. § 1746. In 28 U.S.C. § 1746, the form used for declarations or affidavits executed outside the United States is only distinguishable from those executed within the United States by requiring language specifying that the affiant or declarant is subject to the penalties of perjury "under the laws of the United States of America." *See id.* Therefore, a declaration or affidavit executed outside of the United States must include substantially similar language in order to comply with 28 U.S.C. § 1746.

Counsel for Lilly presented two cases to the Court during oral argument, *Ty, Inc. v. MJC-A World of Quality*, No. 93 C 3478, 1994 WL 36880 (N.D. Ill. Feb. 4, 1994), and *Matsuda v. Wada*, 101 F. Supp. 2d 1315 (D. Haw. 1999), to contend that the Court may still consider the Affidavits even though the JLT Witnesses did not specifically subject themselves to the penalties of perjury "under the laws of the United States of America." However, the Court does not find either of these cases persuasive. First, while the court

11

in *Ty* noted that the absence of the phrase "under the law of the United States of America" did not "substantially alter" the form provided by 28 U.S.C. § 1746(2) for statements executed within the United States, 1994 WL 36880 at *1-2, that court did not address how such an omission would affect an affidavit executed outside of the United States, such as the Affidavits. Furthermore, the text of 28 U.S.C. § 1746(2) quoted by the *Ty* court does not accurately reflect the current language of 28 U.S.C. § 1746(2). *Id.*

With regard to *Matsuda*, the court in that case found that a plaintiff's declaration substantially complied with 28 U.S.C. § 1746 without including language similar to "under the laws of the United States of America." 101 F. Supp. 2d at 1322-23. However, unlike this action where the Court lacks personal jurisdiction over the non-party JLT Witnesses in their individual capacities, the court in *Matsuda* had personal jurisdiction over the plaintiff to enforce the penalties of perjury applicable under the laws of the United States, even without including such language. *See Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 859 (7th Cir. 2016) (finding that a plaintiff that files suit in a particular forum purposefully avails itself to that forum's jurisdiction).

Because the Affidavits do not substantially state that they were made pursuant to the penalties of perjury "under the laws of the United States of America," the Affidavits do not comply with the requirements of 28 U.S.C. § 1746. The absence of this language is critical because without it, the JLT Witnesses have not subjected themselves to the perjury laws of the United States, and there is no way for the Court to enforce such perjury laws to ensure the veracity of the Affidavits.

**B. HEARSAY**

Arch also claims that the Affidavits lack sufficient guarantees of trustworthiness because it is unable to cross-examine the JLT Witnesses, which renders the Affidavits inadmissible hearsay that cannot be considered on summary judgment. Dkt. No. 632 at 20-22. The Court agrees.

Hearsay is defined as a statement that is made outside of "the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Generally, such a statement is "not admissible unless it falls within an exception to the hearsay rule." *United States v. Hawkins*, 803 F.3d 900, 901 (7th Cir. 2015). *See also*, Fed. R. Evid. 802. The parties do not dispute that the Affidavits are hearsay. Therefore, the Affidavits must fall under an exception to the general rule against hearsay to be considered admissible evidence.

Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). All evidence submitted for summary judgment purposes must generally be admissible at trial. *See McFeely v. United States*, 700 F. Supp. 414 n.1 (S.D. Ind. 1988); *Bortell v. Eli Lilly and Co.*, 406 F. Supp. 2d 1, 8 (D.D.C. 2005). While there is no specific requirement in Rule 56 that an affiant be cross-examined in order for his or her affidavit to be used on summary judgment, such an "affidavit would not be admissible at trial unless [the opposing party] were able to cross-examine [the affiant] as to its contents." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 604 (7th Cir. 2000). Therefore, if an affiant cannot be subjected to cross-examination either

in a pre-trial deposition or at trial, his or her affidavit generally will not be considered on summary judgment. *See Bortell*, 406 F. Supp. 2d at 9 ("Without [the affiants'] availability to testify and undergo cross-examination either at trial or in a pre-trial deposition, the Court cannot credit the affidavits as anything more than hearsay.").

Just as the Court lacks personal jurisdiction to compel the JLT Witnesses to appear for depositions or cross-examination in their individual capacities, *supra* Part II, the Court similarly cannot compel the JLT Witnesses to testify or be cross-examined in their individual capacities at trial. Although the JLT Witnesses may be hauled into this Court to appear as corporate representatives of JLT under Rule 30(b)(6), their Affidavits were executed in their individual capacities, rather than their official capacities for JLT. Because the JLT Witnesses may only be compelled to testify and to be cross-examined as Rule 30(b)(6) representatives for JLT, they cannot be compelled to testify regarding the Affidavits executed in their personal capacities. *See Kessler*, 2011 WL 4483775 at *3. Therefore, the Affidavits constitute inadmissible hearsay that cannot be considered by the Court on summary judgment unless they fall under an exception to the rule against hearsay.

FRE 804 provides exceptions to the rule against hearsay when a declarant is unavailable as a witness. Specifically, FRE 804(b) allows a declarant's hearsay statement to be considered admissible evidence if the statement: (1) was from testimony the declarant previously provided "as a witnesses at a trial, hearing, or lawful deposition" and "is now offered against a party [or its predecessor in interest] who had … an opportunity and similar motive to develop it by direct, cross-, or redirect examination"; (2) was made under the declarant's belief of his or her imminent death; (3) was against the

declarant's interests; (4) described the declarant's personal or family history; or (5) was "offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result."  A declarant may be considered to be an unavailable witness if he or she does not attend the trial or hearing because "the statement's proponent has not been able, by process or other reasonable means," to obtain the declarant's attendance or testimony.  Fed. R. Evid. 804(a)(5).  Although the JLT Witnesses may be considered unavailable witnesses because they cannot be compelled to testify in their personal capacities "by process or other reasonable means," the Affidavits do not satisfy any of the exceptions listed in FRE 804(b).  Therefore, FRE 804 does not excuse the Affidavits from the rule against hearsay.

Lilly argues that the residual exception in FRE 807 allows the Court to consider the Affidavits even if they do not fall under any other exception to the rule against hearsay.  Dkt. No. 652 at 18-19.  Under FRE 807, "a hearsay statement is not excluded by the rule against hearsay," even if it is not specifically covered by another hearsay exception, if the statement (1) "has equivalent circumstantial guarantees of trustworthiness" to other hearsay exceptions; (2) "is offered as evidence of a material fact"; (3) "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts"; and (4) "will best serve the purposes of [the Federal Rules of Evidence] and the interests of justice."  Fed. R. Evid. 807.  When applying FRE 807, "[a] court must be 'confident … that the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility.'"  *Bortell*, 406 F. Supp. 1 at 9 (quoting *Lilly v. Virginia*, 527 U.S. 116, 136 (1999)).

In this instance, the Court has no reasonable avenue to ensure the truthfulness of the Affidavits. As discussed above, the veracity of the Affidavits cannot be ensured by the penalties of perjury because the JLT Witnesses did not subject themselves to the perjury laws of the United States. *See supra* Part III.A. The JLT Witnesses also cannot be compelled to testify under cross-examination regarding the Affidavits because the Court lacks personal jurisdiction over them in their individual capacities. *See supra* Part II. Therefore, the Court lacks sufficient guarantees of the trustworthiness as to the Affidavits. Furthermore, because the JLT Witnesses worked through the U.S. Brokers to acquire the insurance coverage sought by Lilly U.S. and did not work directly with the insurers to obtain the policies at issue, *see* Pettman Aff., ¶ 7, more probative evidence is likely available regarding the intentions of the insurers involved from either the insurers themselves or the U.S. Brokers directly involved in negotiating the policies. Based on these circumstances, the residual exception in FRE 807 does not exempt the Affidavits from the rule against hearsay. Because the Affidavits amount to inadmissible hearsay, without any way to test their veracity, the Court must strike the Affidavits.

## IV. <u>PERSONAL KNOWLEDGE</u>

Even if the Court could test the truthfulness of the Affidavits, the Court must still strike the Affidavits because the JLT Witnesses lack personal knowledge of the information contained within them. As stated above, Rule 56 requires that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge…" Fed. R. Civ. P. 56(c)(4). Any statements made "'outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet'" the personal knowledge requirement of Rule 56(c)(4).

*Strong v. Del. Cty.*, 976 F. Supp. 2d 1038, 1043-44 (S.D. Ind. 2013) (quoting *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999)).

Generally, a witness may only testify regarding matters on which that witness has personal knowledge and only if there is sufficient evidence to support the witness's personal knowledge of that matter. Fed. R. Evid. 602. However, expert witnesses, who are qualified to testify on a particular subject based on their "knowledge, skill, experience, training, or education" on that subject, may provide their opinions within their testimony. Fed. R. Evid. 702. In accordance with Rule 26, each party must disclose the names of the individuals serving as witnesses to the opposing party and must designate which witnesses they intend to use as expert witnesses. *See Tribble v. Evangelides*, 670 F.3d 753, 759-60 (7th Cir. 2012) (finding that Rule 26 requires disclosure of each party's fact and expert witnesses and that the "duty to disclose a witness *as an* expert is *not* excused [even] when a witness who will testify as a fact witness *and* as an expert witness is disclosed as a fact witness.") (emphasis in original).

In the Affidavits, the JLT Witnesses state that, based on their experience, education, and training, they believe that Lilly U.S., its insurance brokers, and the insurers who sold the policies at issue to Lilly U.S. "were aware, and intended, that those policies should cover Lilly [U.S.]'s world-wide operations, including those at, or arising from the activities of Lilly [U.S.]'s wholly-owned subsidiary, Lilly [Brasil]." Pettman Aff., ¶ 10; Brown Aff., ¶ 9. However, the JLT Witnesses were not directly involved in negotiating the insurance policies at issue and instead relied the U.S. Brokers to directly communicate with the insurers to procure such policies. Pettman Aff., ¶ 7. Because the JLT Witnesses did not directly participate in the negotiations between the insurers and the U.S. Brokers

for the policies at issue, they do not have the necessary personal knowledge of such communications to reasonably support their beliefs as to what the insurers understood about these policies. While their testimony could potentially qualify as expert opinion testimony, Lilly has not designated either of the JLT Witnesses as experts that can render such opinions. *See* Fed. R. Evid. 702; Fed. R. Civ. P. 26. Because the JLT Witnesses are not designated as expert witnesses and because they lack personal knowledge of the negotiations for the policies at issue, the Court must strike the Affidavits for this additional reason.

## V. <u>MOTION FOR SANCTIONS</u>

In addition to seeking to compel the depositions of the JLT Witnesses, or alternatively, to strike the Affidavits, Arch also requests that the Court require Lilly to pay Arch's attorneys' fees and costs incurred for this Motion and all of its prior attempts to obtain discovery from the JLT Witnesses. Dkt. No. 632 at 31. To support this motion for sanctions, Arch argues that counsel for Lilly violated Rule 3.4 of the Indiana Rules of Professional Conduct ("Rule 3.4") by discouraging JLT from cooperating with Arch's discovery requests voluntarily. *Id.* at 23. Arch also asserts that Lilly improperly obtained the Affidavits in exchange for Lilly agreeing to release and indemnify the JLT Witnesses from any potential liability arising from this litigation. *Id.* at 24-26. Furthermore, Arch claims that it is entitled to recover its fees because Lilly misled Arch and the Court regarding its ability to control JLT and by suggesting to the Court that Arch proceed through the Hague Convention to obtain its desired discovery from the JLT Witnesses. *Id.* at 26-30.

Lilly, however, argues that its counsel did not violate Rule 3.4 because its counsel never specifically requested that JLT resist Arch's discovery requests. Dkt. No. 652 at 25-27. Lilly also states that it never "bribed" the JLT Witnesses to execute the Affidavits through a release and indemnity contract because the agreement was in place before Lilly's counsel first met with the JLT Witnesses. *Id.* at 28-33. Lilly further asserts that it did not mislead Arch or the Court with its prior recommendation to proceed through the Hague Convention because Lilly had no way to predict how JLT would respond to Arch's Hague Convention proceedings. *Id.* at 33. Moreover, Lilly argues that it should not be responsible for Arch's decision to not take the JLT Witnesses' depositions under the restrictive terms negotiated by Arch and JLT. *Id.* at 34.

Arch's claim regarding Rule 3.4 originates from an email sent by Lilly's counsel to JLT on January 18, 2016, addressing a subpoena for documents that Arch had sent to JLT. Dkt. No. 556, Ex. 13 at 2. In this email, Lilly's counsel advised JLT that it could inform Arch's counsel that all non-privileged documents sought through the subpoena had already been produced by Lilly and noted that "[i]f it is otherwise [JLT's] policy to also insist on proper service, the combination of those things might be enough to make the subpoena go away." *Id.* Under Rule 3.4(f), a lawyer cannot "request a person other than a client to refrain from voluntarily giving relevant information to another party unless" (1) that person is a relative, employee, or other agent of the lawyer's client, and (2) "the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information." A lawyer also may not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value" or otherwise "counsel or assist another

person to do any such act." Ind. R. Prof. Cond. 3.4(a). Although this email certainly suggests that Lilly's counsel would like for JLT to make Arch's subpoena "go away," Lilly's counsel falls short of affirmatively "requesting" that JLT refrain from cooperating with the subpoena. Because Lilly's counsel did not actually request that JLT resist or obstruct Arch's subpoena, the Court finds that Lilly's counsel did not violate Rule 3.4.

Furthermore, the release and indemnity agreement had no apparent impact on the JLT Witnesses' Affidavits. The Confidential Release agreement executed by Lilly and JLT on November 10, 2014, in which Lilly releases and indemnifies the JLT Witnesses from any liability associated with this litigation, was formed as a condition for JLT allowing the JLT Witnesses to meet with Lilly's counsel regarding their involvement with the placement of Lilly U.S.'s excess liability coverages. Dkt. No. 556, Ex. 4; Dkt. No. 568, Ex. A, ¶¶ 7-13. The Confidential Release agreement specifies that it was formed largely because Lilly wanted "to interview and/or obtain witness affidavits" from the JLT Witnesses and sought their cooperation. Dkt. No. 556, Ex. 4 at 2. Although Arch argues that the Confidential Release agreement improperly provided the JLT Witnesses with a valuable benefit in exchange for their testimony in favor of Lilly's position, there is no evidence suggesting that the existence of this agreement swayed the JLT Witnesses' testimony within the Affidavits in any way. Rather, the Confidential Release agreement may have encouraged the JLT Witnesses to testify more freely, without the risk of any potential liability to Lilly resulting from their statements. Therefore, the Confidential Release agreement did not improperly provide value to the JLT Witnesses in exchange for their testimony.

Notwithstanding these conclusions, Lilly must still be required to pay Arch's fees in relation to this Motion, in accordance with Rule 37(a)(5). When a court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" (2) "the opposing party's nondisclosure, response, or objection was substantially justified;" or (3) "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If a court grants in part and denies in part a motion to compel, that court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). In this instance, where the Court is granting in part and denying in part the Motion and is striking the Affidavits, an award of fees pursuant to Rule 37(a)(5)(C) is proper.

Based on Lilly's actions in relation to Arch's Hague Convention proceedings, Arch is entitled to recover its fees for this Motion from Lilly. First, Lilly initially brought the Affidavits into the suit by attaching them to its Second Amended Complaint and should have anticipated that the defendants would seek to depose the JLT Witnesses regarding them. When opposing Arch's prior Motion to Strike the Affidavits, Lilly also encouraged the Court to deny Arch's motion and to direct Arch to pursue discovery directly from the JLT Witnesses in accordance with the Hague Convention procedures, noting that the JLT Witnesses "are available for deposition in London." Dkt. No. 568 at 3, 7. Moreover, the Confidential Release agreement between Lilly and JLT required JLT to "request and/or

encourage [the JLT Witnesses] to provide reasonable cooperation and assistance to Lilly and its legal advisers in the conduct of the aforementioned existing proceedings concerning Lilly [Brasil]." Dkt. No. 556, Ex. 4, ¶ 4. Therefore, if Lilly had desired for JLT to comply with Arch's requests in the UK Court, it appears that it could have had a great deal of influence to encourage JLT to comply. Furthermore, Lilly now claims that it will have to file its own application according to the Hague Convention's procedures in order to obtain the JLT Witnesses' trial testimony. Dkt. No. 674 at 6. Although Lilly was not directly involved in the prior UK Court proceedings, it remained aware of JLT's involvement in the UK Court and could have encouraged JLT's cooperation with this litigation in order to allow Arch to get the discovery it sought and to avoid a second proceeding through the Hague Convention. *See* Dkt. No. 632, n.11. While Lilly correctly points out that Arch could have conducted "U.S.-style" depositions of the JLT Witnesses under terms negotiated with JLT, such terms, which greatly restricted the amount of time in which Arch could question the JLT Witnesses and the subject matters that could be addressed, would not have allowed Arch a sufficient opportunity to adequately test the veracity of the statements made within the Affidavits. *See* Dkt. No. 674 at 3-5. Therefore, in light of these circumstances, the Court awards Arch its fees in relation to this Motion.

# V. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Motion. The Court **STRIKES** the affidavits of Ian S. Pettman and Mike Brown, and all references thereto, as they appear in conjunction with Lilly's Second Amended Complaint and Cross Motion for Partial Summary Judgment, or any responses to such documents. Arch shall be permitted to take Rule 30(b)(6) depositions of JLT regarding JLT's involvement in procuring and managing the insurance policies at issue in this action, in accordance with the relevant Federal Rules of Civil Procedure. Furthermore, Lilly shall be required to pay Arch's costs in connection with this Motion. Arch shall file proof of its reasonable attorney's fees associated with the Motion within fourteen days from the date of this Order, and Lilly shall have ten days thereafter to file its objections to Arch's claimed fees.

IT IS SO ORDERED this 10th day of July, 2017.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to all registered attorneys of record via ECF.